United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JULIAN JAMES RAY BARNES,<br><br>Plaintiff,<br><br>v.<br><br>YOUTUBE, INC., et al.,<br><br>Defendants. | Case No.  25-cv-05901-VKD<br><br>**ORDER DENYING JOHN DOE'S MOTION TO QUASH SUBPOENA**<br><br>Re: Dkt. No. 29 |

John Doe, a defendant in this action whose identity is unknown, moves to quash plaintiff Julian Barnes's subpoena issued to defendant YouTube, LLC[1] ("YouTube"), seeking information identifying Doe. Dkt. No. 29. Mr. Barnes opposes the motion to quash. Dkt. No. 32. Both Mr. Barnes and Doe are representing themselves. The Court finds this dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

Having considered the motion, opposition, the record before the Court, and the applicable law, the Court denies Doe's motion to quash to the subpoena.

## I.    BACKGROUND

On July 15, 2025, Mr. Barnes filed a verified complaint for copyright infringement under 17 U.S.C. § 501 against defendants YouTube and "John Doe d/b/a Evil Streets TV."[2]  Dkt. No. 7.

---

[1] YouTube is sued as "YouTube, Inc., d/b/a/ YouTube, LLC."  *See* Dkt. No. 7 ¶ 9.  However, YouTube states that its correct name is "YouTube, LLC."  *See* Dkt. No. 19 at 1.

[2] The Court may rely on statements of fact in Mr. Barnes's verified complaint as if they were

Mr. Barnes alleges that he is the author of book titled *Drug Lords of Oakland* (*"Drug Lords"*), for which he holds a registered copyright. *Id.* ¶ 8. He states that he does not know the "true name or capacit[y]" of defendant Doe, but he alleges that Doe operates a YouTube channel called Evil Streets TV. *Id.* ¶¶ 2, 11, 17-21. According to the complaint, between April 17, 2025 and May 25, 2025, Doe posted five videos to the Evil Streets TV YouTube channel. *Id.* ¶¶ 17-21. Each video included a narration from a different chapter of *Drug Lords* and displayed copyrighted photographs from the book. *Id.* The complaint alleges that, at Mr. Barnes's request, YouTube removed the accused videos. *Id.* ¶ 25. Doe responded by asking that all five videos be reinstated. *Id.* ¶ 30. Mr. Barnes contends that Doe's videos infringe his copyright in *Drug Lords*. *Id.* ¶¶ 33-36. He seeks damages, as well as declaratory and injunctive relief. *Id.* at 10-11.

On July 15, 2025, the same day he filed his complaint, Mr. Barnes filed a request asking the Court to issue a subpoena pursuant to the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512(h)(1), addressed to YouTube, seeking the "identity of the official account holder and/or operator (And any other pertinent info) of EVIL STREETS TV (channel)." Dkt. No. 3. Because the request did not meet the statutory requirements of § 512(h)(1), the Court denied the request without prejudice. Dkt. No. 11. On November 7, 2025, Mr. Barnes filed a "motion for subpoena to identify infringer," which attaches a proposed subpoena. Dkt. No. 15. Because the proposed subpoena was not in the proper form for issuance, the Court again denied Mr. Barnes's request without prejudice, and directed him to re-file an amended proposed subpoena. Dkt. No. 16.

On December 9, 2025, Mr. Barnes filed an amended proposed subpoena, seeking the "[i]dentity of [i]nfringer: John Doe d/b/a Evil Streets TV." Dkt. No. 25. That same day, the Court directed the Clerk of the Court to "expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider" pursuant to 17 U.S.C. § 512(h)(4). Dkt. No. 26.

made by declaration. *See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. 12-cv-04634 SI, 2012 WL 5471143, at *9 (N.D. Cal. Nov. 9, 2012) (citing *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985)) ("Allegations in a verified complaint are entitled to the same weight as averments in an affidavit.").

## II.    LEGAL STANDARD

The DMCA permits copyright holders to subpoena service providers, like YouTube, for information identifying an alleged copyright infringer.  *See* 17 U.S.C. § 512(h).  Upon receipt of the issued subpoena, the service provider must "expeditiously disclose" the required information to the copyright owner, "notwithstanding any other provision of law."  17 U.S.C. § 512(h)(5).  However, the DMCA specifies that "the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum."  17 U.S.C. § 512(h)(6).  As many courts have recognized, this provision incorporates Rule 45 of the Federal Rules of Civil Procedure.  *See, e.g., Cognosphere Pte. Ltd. v. X Corp.*, No. 23-mc-80294-PHK, 2024 WL 4227594, at *2 (N.D. Cal. Sept. 18, 2024); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 877 (N.D. Cal. 2022); *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1153 (N.D. Cal. 2013).

Rule 45 provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  In addition, a court may limit discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

## III.    DISCUSSION

Doe makes several arguments in support of his motion to quash Mr. Barnes's subpoena to YouTube.  First, Doe argues that because the subpoena seeks information revealing his identity, it violates his First Amendment right to anonymous speech.  Second, Doe argues that Mr. Barnes

1    may not obtain Doe's identifying information unless Mr. Barnes first obtains a court order

2    permitting the disclosure.  Third, Doe argues that Mr. Barnes no longer needs Doe's identifying

3    information because the accused videos have been removed, rendering Mr. Barnes's copyright

4    claim moot.  Finally, Doe argues that the subpoena is overbroad and otherwise improper under

5    Rule 45.  The Court addresses each argument in turn.

6        **A.    First Amendment Objections**

7        "A recipient of a DMCA subpoena may . . . move to quash on the basis that the subpoena

8    would require disclosure of material protected by the First Amendment."  *In re DMCA § 512(h)*

9    *Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 877.  Here, Doe argues that he has a First

10   Amendment interest in engaging in anonymous speech.  Dkt. No. 29 at 2.  In his opposition, Mr.

11   Barnes does not dispute (or even address) Doe's argument that he has a constitutional right to

12   remain anonymous.  Instead, Mr. Barnes argues that Doe has "forfeited" any First Amendment

13   rights he might have because Doe operated Evil Streets TV as a "monetized" YouTube channel.

14   Dkt. No. 32 at 2.  Mr. Barnes also argues that Doe's First Amendment rights must give way to Mr.

15   Barnes's need for identifying information that will permit him to proceed with the litigation

16   against Doe.  *Id.* at 4-5.

17       "[A]n author's decision to remain anonymous, like other decisions concerning omissions

18   or additions to the content of a publication, is an aspect of the freedom of speech protected by the

19   First Amendment."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).  This

20   protection applies equally to material published online.  *In re Anonymous Online Speakers*, 661

21   F.3d 1168, 1173 (9th Cir. 2011).  When adjudicating objections to a request for discovery of

22   information that would reveal the identity of an anonymous speaker, a court must consider the

23   First Amendment implications of the requested disclosure.  *Id.* at 1176-77; *In re DMCA § 512(h)*

24   *Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876.

25       The degree of First Amendment scrutiny depends on the circumstances and the nature of

26   the speech at issue.  *In re Anonymous Online Speakers*, 661 F.3d at 1173, 1177.  As a general

27   matter, political and religious speech is afforded greater protection than commercial speech, while

28   some speech, such as obscenity, is afforded no protection.  *Id.* at 1173.  Mr. Barnes appears to

United States District Court
Northern District of California

4

1    suggest that Doe's speech is commercial because Doe received money in connection with posting

2    the allegedly infringing videos on his YouTube channel.  This argument is unpersuasive and

3    unsupported by any citation to applicable authority.  The Supreme Court has described

4    commercial speech as "expression related solely to the economic interests of the speaker and its

5    audience," such as advertising that proposes a commercial transaction.  *Central Hudson Gas &*

6    *Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980); *see Retail Digit.*

7    *Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017) (discussing *Central Hudson* standard).

8    However, as described in the complaint and the opposition, the accused videos are not

9    advertisements and do not propose any commercial transactions; rather, they appear to contain,

10    like the book chapters Mr. Barnes says Doe copied, historical accounts of the "li[ves] and

11    career[s]" of specific individuals—i.e., so-called "drug lords" of Oakland.  Dkt. No. 7 ¶¶ 17-21;

12    Dkt. No. 32 at ECF 8, 10, 12, 14.  Thus, for purposes of resolving this motion, the Court assumes

13    that Doe's videos contain the type of expression that is entitled to the protection generally afforded

14    literary or artistic works.  *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952)

15    (motion pictures, even if distributed for profit, are entitled to full First Amendment protection as a

16    medium for communication of ideas); *Project Veritas v. Schmidt*, 125 F.4th 929, 942-43 (9th Cir.),

17    *cert. denied sub nom. Project Veritas v. Vasquez*, 146 S. Ct. 90 (2025).

18         Nevertheless, Doe's First Amendment right to remain anonymous is not absolute.  Mr.

19    Barnes contends that Doe has published videos that infringe Mr. Barnes's copyright.  And there is

20    no question that Doe's First Amendment right to anonymity does not give him the right to engage

21    in copyright infringement.  *See Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)

22    ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such

23    infringement by other persons, it is unprotected by the First Amendment."); *In re DMCA*

24    *Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020) (same).

25         In these circumstances, the Ninth Circuit requires a court to consider and weigh both the

26    anonymous speaker's First Amendment interest and the subpoenaing party's need for identifying

27    information.  "Operationally, the inquiry consists of two steps."  *In re DMCA § 512(h) Subpoena*

28    *to Twitter, Inc.*, 608 F. Supp. 3d at 876. "First, the party seeking the disclosure must demonstrate a

prima facie case on the merits of its underlying claim.  Second, the court balances the need for the discovery against the First Amendment interest at stake."  *Id.*  "Thus, when adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should (1) notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim."  *Id.*  With respect to the first consideration, although Doe has not formally appeared in the action, he received notice of Mr. Barnes's subpoena to YouTube and has filed the present motion to quash it, and so far, the Court has permitted Doe to proceed anonymously.  Thus, the second and third considerations drive the Court's analysis.

### 1.    Whether Mr. Barnes Has Established a Prima Facie Case of Copyright Infringement

To establish a prima facie case of copyright infringement, Mr. Barnes must show: (1) ownership of the copyrighted material, and (2) violation by the accused infringer of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.  *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), *and aff'd sub nom. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002); *see* 17 U.S.C. § 501(a) (infringement occurs when alleged infringer engages in activity listed in § 106).  Among the exclusive rights enjoyed by copyright holders are the rights to reproduce the copyrighted work and to prepare derivative works based on the copyrighted work.  17 U.S.C. § 106(1), (2).

The Court finds that Mr. Barnes has made both required showings.

First, Mr. Barnes has shown ownership of the copyrighted material at issue.  He attests that he is the author of *Drug Lords*, for which he holds a registered copyright.  Dkt. No. 7 ¶ 8; Dkt. No. 32 at 4.  He has provided a copy of the registration.  Dkt. No. 32 at ECF 16-17.  Doe does not dispute Mr. Barnes's showing on this point.

Second, Mr. Barnes has shown that Doe copied portions of *Drug Lords* without

United States District Court
Northern District of California

authorization.  Specifically, Mr. Barnes attests that between April 17, 2025 and May 25, 2025, Doe posted five videos to the Evil Streets TV YouTube channel, each including a narration from a different chapter of *Drug Lords* and displaying copyrighted photographs from the book.  Dkt. No. 7 ¶¶ 17-21; *see also* Dkt. No. 32 at 2.  At least three of Doe's videos included a statement in the caption acknowledging that "information for this video was obtained from Drug Lords of Oakland by Titus Lee Barnes."  Dkt. No. 7 ¶¶ 18-20; Dkt. No. 32 at ECF 10, 12, 14.  Doe does not dispute Mr. Barnes's showing on this point, nor does he deny Mr. Barnes's allegations regarding the contents of the accused videos and the use of text and images from *Drug Lords*.[3]  Doe also does not dispute that he operates or controls the Evil Streets TV YouTube channel.

Accordingly, the Court concludes that Mr. Barnes has established a prima facie case of copyright infringement by Doe.

### 2.    Whether Mr. Barnes's Need for Disclosure Outweighs Doe's First Amendment Interest

By means of the DMCA subpoena to YouTube, Mr. Barnes seeks information identifying Doe as the person who operates the Evil Streets TV YouTube channel so that Mr. Barnes can proceed with his copyright infringement claims against Doe.  *See* Dkt. No. 32 at 4-5.  Doe is a defendant in this action, not merely a non-party witness, and without information about Doe's actual identity, Mr. Barnes cannot specifically identify him as defendant, properly serve him with process, proceed with the litigation, and obtain and enforce a remedy.  *See, e.g., Cognosphere*, 2024 WL 4227594, at *8; *Castro v. Doe*, No. 23-mc-80198-TSH, 2023 WL 9232964, at *6 (N.D. Cal. Oct. 12, 2023).  It appears unlikely that Mr. Barnes can obtain Doe's identity from any source other than YouTube.  Thus, the subpoena seeks information that is critical to Mr. Barnes's ability to proceed with this litigation.  *See Cognosphere*, 2024 WL 4227594, at *8 (the identity of an anonymous infringer "is materially relevant, if not critical to the claim").

On the other hand, Doe does not identify any concrete harm he is likely to suffer if his identity is revealed to Mr. Barnes.  Doe asserts that revealing his identity "would expose [him] to

---

[3] Although Doe states that "[t]he applicability of fair use has not been adjudicated," Dkt. No. 29 at 2, he does not affirmatively contend that the alleged copying constitutes "fair use" of Mr. Barnes's work, nor does he suggest any plausible basis for the Court to so conclude.

1    potential harassment or retaliation." Dkt. No. 29-1.  But this claim is entirely conclusory.  Doe

2    does not describe the nature of the potential harassment or retaliation or its source, nor does he

3    explain why he believes disclosure of his identity to Mr. Barnes would result in harassment or

4    retaliation.  While Doe is correct that anonymity facilitates free speech, it also facilitates

5    avoidance of responsibility for copyright infringement.  Doe's interest in avoiding such

6    responsibility is not entitled to any weight.

7        Accordingly, the Court concludes that Mr. Barnes's need for disclosure of identifying

8    information outweighs Doe's interest in anonymity here.

9        **B.    Necessity of Court Order**

10        Doe argues that "[n]o court order currently authorizes the disclosure of identifying

11    information associated with any anonymous speaker." Dkt. No. 29 at 1.  However, a DMCA

12    subpoena is effective once it is issued by the Clerk of the Court; a separate court order is not

13    required before compliance is required.  *See* 17 U.S.C. § 512(h)(5), (6); *see, e.g., Cognosphere*,

14    2024 WL 4227594, at *9 (observing that "[t]he Federal Rules of Civil Procedure contemplate that

15    discovery matters will generally be self-effectuating by the Parties without constant court

16    intervention.").  The Court denies Doe's motion to quash on this basis.

17        **C.    Mootness Objection**

18        Doe argues that Mr. Barnes no longer requires the information sought in the subpoena

19    because the allegedly infringing videos, and the Evil Streets TV channel itself, have been removed

20    from the YouTube platform, thereby mooting Mr. Barnes's copyright claim.[4]  Dkt. No. 29 at 2-3.

21    Doe is mistaken.  A claim for copyright infringement is not necessarily mooted by removal of the

22    accused material from display or publication.  Mr. Barnes seeks damages (including statutory

23    damages) and injunctive relief as remedies for the alleged infringement. Dkt. No. 7 at 10-11.

24    Thus, even if infringing activity has ceased, Doe may still be responsible for damages.  The Court

25    denies Doe's motion to quash on this basis.

26

27

28    _____
      [4] It is not clear when the accused videos were removed from the YouTube platform.

United States District Court
Northern District of California

### D.    Overbreadth Objection

Doe argues that the subpoena is "overbroad" and improper under Rule 45 because "the subpoena's sole apparent purpose is to identify an anonymous speaker rather than to obtain evidence relevant to an adjudicated claim." Dkt. No. 29 at 2. The subpoena is not overbroad. It seeks only "Identity of Infringer: John Doe d/b/a/ Evil Streets TV." Dkt. No. 27. As explained above, Mr. Barnes requires information identifying Doe so that he may serve the complaint and summons and proceed with the litigation. This is an appropriate purpose. *See Signature Mgmt.*, 941 F. Supp. 2d at 1157 (denying motion to quash); *Cognosphere*, 2024 WL 4227594, at *8 (same); *see also UMG Recordings, Inc. v. Doe,* No. 08-cv-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008) (permitting limited discovery in advance of Rule 26(f) conference to determine the true identity of Doe defendant accused of copyright infringement). Doe identifies no other aspect of the subpoena that is improper. The Court denies Doe's motion to quash on this basis.

## IV.    CONCLUSION

Having considered the motion, opposition, the record before the Court, and the applicable law, and for the reasons explained above, the Court denies Doe's motion to quash to Mr. Barnes's subpoena. The February 17, 2026 hearing is vacated.

**IT IS SO ORDERED.**

Dated: February 13, 2026

Virginia K. DeMarchi
United States Magistrate Judge